IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL R. DENIUS AND BARBARA J. DENIUS,** | : : : | **Civil No. 1:23-CV-00428** |
| **Plaintiffs,** | : : : | |
| v. | : : : | |
| **REAL TIME RESOLUTIONS, INC.** | : : : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is a motion to dismiss the amended complaint for failure to state a claim filed by Defendant Real Time Resolutions, Inc. ("Real Time"). (Doc. 8.) For the reasons set forth below, the motion will be granted.

## I. BACKGROUND

This case arises from a dispute involving Real Time's collection of a debt on property previously owned by Plaintiffs Michael and Barbara Denius ("Plaintiffs") in Marysville, Pennsylvania. The following facts taken from the amended complaint and accompanying exhibits are considered true for purposes of evaluating this motion.

Around February 13, 1998, Plaintiffs borrowed $35,000 from the Numax Mortgage Corporation to purchase real estate at 1980 New Valley Road, Marysville, Pennsylvania ("the property"), which was secured by a mortgage on the property.

1

(Doc. 6 ¶¶ 11-13.) Together with the mortgage, Plaintiffs signed a note outlining the repayment terms of their debt obligation to Numax. (*Id.* at ¶¶ 12-13.) In 2001, Plaintiffs filed for Chapter 7 bankruptcy and received a discharge order for all debts, including the debt obligation secured by the Numax mortgage. (*Id.* at ¶ 16.)

In 2022, Plaintiffs contracted to sell the property to a third party with a closing date of April 27, 2022. (*Id.* ¶¶ 21, 23-24.) Prior to closing, Real Time sent Plaintiffs a "payoff demand" advising them that it required payment of $76,056.43 to satisfy the Numax mortgage on the property. (*Id.* ¶ 22.) However, the Recorder of Deeds of Perry County indicated no assignment of the Numax mortgage to any other entity. (*Id.* ¶ 18.) Despite questioning Real Time's authority to collect the debt and not receiving any response to their inquiries, Plaintiffs made the full payment to Real Time. (*Id.* ¶ 23.) Real Time later filed a mortgage satisfaction document only after Plaintiffs filed this lawsuit. (*Id.* ¶ 30.)

On March 10, 2023, Plaintiffs initiated this action by filing a complaint, which was subsequently amended on June 6, 2023. (Docs 1 & 6.) Count I of the amended complaint asserts a violation of Pennsylvania's Mortgage Satisfaction Act ("MSA"), 21 P.S. § 721-6 (Doc. 6 ¶ 31-33); Count II asserts a claim for violation of Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1 – 2270.6 (*id.* ¶¶ 34-40); and Count III asserts a claim for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 – 1692p (*id.* ¶¶ 41-47).

2

Jurisdiction is proper over Count I and II under 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1367 and Count III under 28 U.S.C. § 1331.

Real Time has filed a motion to dismiss Plaintiffs' claims for failure to state a claim. (Doc. 5.) The motion has been fully briefed and is ripe for review.

I.   **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir.

2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.   DISCUSSION

### A. Plaintiffs lack Article III standing to assert a claim under the Mortgage Satisfaction Act

The MSA is a recording statute requiring a mortgagee to record the satisfaction of a mortgage by the mortgagor within sixty days of receipt of (1) payment of the entire mortgage obligation and recording costs and (2) the first written request by the mortgagor for a satisfaction document. 21 P.S. § 721-6. Failure to do so entitles the mortgagor to a penalty not more than the original loan amount secured by the mortgage. *Id.*

To establish Article III standing, a plaintiff must show that (1) they suffered some concrete, particularized, and actual or imminent injury-in-fact; (2) the injury was likely caused by the defendant; and (3) the injury is likely redressable by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560-61 (1992)).

4

For an injury to be concrete within the Article III standing analysis, it must be "real, and not abstract," and courts are required to assess whether the alleged injury has a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016) (internal quotation marks omitted). Traditional harms, like physical or monetary harms, "readily" qualify as concrete under Article III. *TransUnion*, 594 U.S. at 414.

Apart from traditionally recognized harms, Congress too may create causes of action allowing a plaintiff to vindicate violations of their statutorily created rights. *Id.* Congress may not, however, "simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 2205 (citing *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018)). For the purposes of Article III standing, there is a difference between a statutory cause of action to bring suit over an alleged violation of law and a plaintiff's suffering a concrete injury as a result of a defendant's violation of that law. *Id.*

Here, Plaintiffs allege Real Time violated the MSA by failing to publicly record the mortgage satisfaction document within the prescribed sixty-day period, entitling them to the original amount of the loan secured by the mortgage in

accordance with the MSA's penalty provision.[1] (Doc. 6 ¶¶ 31-33.) Real Time correctly points out, however, that Plaintiffs do not allege they suffered any damages as a result of its failure to timely record the mortgage satisfaction document. (Doc. 9, p. 9; Doc. 6 ¶¶ 31-33.) Rather, Plaintiffs merely point to Real Time's violation of the MSA and demand the original loan amount pursuant to the statute. (Doc. 6. ¶¶ 31-33.) They do not allege any traditional forms of injury, like physical or monetary harm, or even intangible harm, like reputational damage, resulting from Real Time's failure to timely record the mortgage satisfaction document.

Because Plaintiffs' allegations concern a purely legal injury, not a factual one, Plaintiffs lack standing to assert a claim under the MSA. *See Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 147 (3d Cir. 2023) ("Only those plaintiffs who have been concretely harmed by [the] defendant's statutory violation may sue that private defendant over that violation in federal court.") (quoting *TransUnion,* 594 U.S. at 427). Accordingly, Real Time's motion will be granted without prejudice with respect to Count I.

    **B. Plaintiffs fail to plausibly allege a violation of the Fair Credit Extension Uniformity Act**

---

[1] While the MSA is a state statute enacted by the Pennsylvania General Assembly, it logically follows that if Congress cannot "enact an injury into existence" for the purposes of Article III standing, neither can a state legislature. *TransUnion*, 594 U.S. at 426.

The FCEUA is a Pennsylvania consumer protection law that prohibits "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. § 2270.1 *et seq*. It does not, however, contain a private cause of action to enforce violations of its provisions. Instead, violations are enforced through a separate consumer protection law: the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq*. 73 P.S. § 2270.5(a).[2] The FCEUA's use of the UTPCPL as its enforcement mechanism means that in order to show a violation of the FCEUA, a plaintiff must meet the elements of a claim under the UTPCPL. *Matteo v. EOS USA, Inc.*, 292 A.3d 571, 581 (Pa. Super. 2023); *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013).

Plaintiffs' allegations that Real Time engaged in a fraudulent practice by collecting an allegedly discharged debt appear to invoke the UTPCPL's catch-all provision, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4)(xxi). To establish liability under this provision, a plaintiff must show (1) a deceptive act by a defendant that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance on that deceptive act; and (3) the

---

[2] "(a) UNFAIR TRADE PRACTICES.— If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law."

justifiable reliance caused an ascertainable loss. *Prukala v. Elle*, 11 F. Supp. 3d 443, 447 (M.D. Pa. 2014). A deceptive act is one that "has the capacity to deceive, and neither the intention to deceive nor actual deception must be proved; rather, it need only be shown that the acts and practices are capable of being interpreted in a misleading way." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 647 (Pa. 2021) (citing *Commonwealth by Shapiro v. Golden Gate Notional Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018)).

In Count II, Plaintiffs aver that Numax never assigned the mortgage to Real Time, and therefore, Real Time acted deceptively by enforcing a discharged and unsecured debt in violation of the bankruptcy discharge order. (Doc. 6 ¶¶ 35-37.) In its motion to dismiss, Real Time argues this claim fails because the lien created against the property to secure the debt survived the bankruptcy, and therefore, Real Time did not act unfairly or deceptively in enforcing its right to payment when the property was sold. (Doc. 9, pp. 10-11.) In response, Plaintiffs contend that Real Time is conflating two distinct transactions – the debt created by the promissory note outlining Plaintiffs' repayment obligations to Numax and the lien created by the mortgage with Numax. (Doc. 10, p. 4.) They argue Real Time purchased only the interest in the debt arising from the note, which was discharged by Plaintiffs' Chapter 7 bankruptcy, and not the lien created by the mortgage, as evidenced by the fact that there was no recording of the assignment of the mortgage transferring the

8

lien interest of Numax to Real Time.³ (*Id.* at p. 5; Doc. 6, ¶¶ 17-19.) As such, Real Time had no right to enforce the discharged debt and acted deceptively in doing so.

However, it is well established in Pennsylvania that the "note and mortgage are inseparable' and '[a]n assignment of the note carries the mortgage with it . . . .'" *Hoffman v. Phelan Hallinan, LLP*, No. 13-CV-5700, 2016 U.S. Dist. LEXIS 100755, *9 (E.D. Pa. Aug. 2, 2016) (quoting *Carpenter v. Longan*, 83 U.S. 271, 274 (1872)); *see CitiMortgage, Inc. v. Barbezat*, 131 A.3d 65, 72 (Pa. Super. 2016) (explaining that the mortgage follows the note). Indeed, a mortgage is the security instrument that ensures repayment of the indebtedness under a note to real property and has no separate existence. *Id.* (citing *Carpenter*, 83 U.S. at 275).

Further, a discharge in bankruptcy extinguishes only the personal liability of the debtor, and a creditor's right to collect on the mortgage survives or passes through bankruptcy. *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—an *in personam* action—while leaving intact another—an *in rem* action."); *Estate of Lellock v. Prudential Ins. Co.*, 811 F.2d 186, 188 (3d Cir. 1987) ("[A]lthough an

---

³ Pennsylvania law does not require that an interest in land be recorded but instead provides protections for those who do. *See Fusco v. Hill Financial*, 683 A.2d 677, 681 (Pa. Super. 1986) ("[T]he fact that the assignment was unrecorded did not disprove that there had been a valid assignment."); *Land v. Commonwealth, Pennsylvania Housing Finance Agency*, 515 A.2d 1024, 1026 (Pa. Cmwlth. 1986) ("Clearly, Pennsylvania's recording laws do not render invalid an unrecorded interest in land . . . an unrecorded mortgage is good as against the mortgager, his alien or mortgage with notice.").

underlying debt is discharged in bankruptcy, the lien created before bankruptcy against property to secure that debt survives.") Thus, a mortgage holder "retains a 'right to repayment' in the form of its right to the proceeds from the sale of the debtor's property." *Johnson*, 501 U.S. at 84.

Because Real Time acquired the mortgage from Numax when it purchased the note and because its right to enforce the mortgage lien was not extinguished by Plaintiffs' bankruptcy, Plaintiffs' claim that Real Time acted unfairly or deceptively in collecting on a "non-existent and discharged debt" fails. Count II will therefore be dismissed without prejudice.

### C. Plaintiffs fail to plausibly allege a violation of the Fair Debt Collection Practices Act

The FDCPA is a federal consumer protection law prohibiting debt collectors from "engaging in deceptive, abusive, or otherwise unfair practices to collect debts." *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 365 (3d Cir. 2018). To prevail on an FDCPA claim, a plaintiff must establish that: (1) they are a consumer; (2) the defendant is a debt collector; (3) the challenged practice relates to the collection of a debt; and (4) the defendant violated the FDCPA in attempting to collect that debt. *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). As relevant here, it is a violation of the FDCPA to make a false representation of "the character, amount, or legal status of any debt . . . ." 15 U.S.C. § 1692e(2)(A); (Doc. 6. ¶ 44.)

10

In determining whether a specific act by a debt collector violates a provision of the FDCPA, courts employ a "least sophisticated debtor" standard. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015). The standard is objective, asking not whether a plaintiff was actually confused, deceived, or misled by a communication, but whether the least sophisticated debtor would be. *Id.* While the least sophisticated debtor standard is deferential to consumers, it is not intended to allow for liability for "bizarre or idiosyncratic interpretations of collection notices." *Decker v. United Collection Bureau Inc.*, No. 20-CV-2229, 2023 U.S. Dist. LEXIS 197360, *8 (M.D. Pa. Nov. 2, 2023) (quoting *Smith v. Lyons, Doughty & Veldhuis, P.C.*, No. 07-CV-5139, 2008 U.S. Dist. LEXIS 56725, *5 (D.N.J. July 23, 2008)). The Third Circuit has held that a debt collection letter is deceptive where it can be reasonably read to have two meanings, one of which is inaccurate. *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 150 (3d Cir. 2023) (quoting *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466 (3d Cir. 2021)).

In Count III, Plaintiffs allege Real Time gave "false and/or misleading representations regarding the character, amount or legal status of the debt once owned by Numax" by collecting on a "non-existent and discharged debt" in violation of the bankruptcy discharge order. (Doc. 6 ¶¶ 43-44.) As explained above, Real Time was legally authorized to collect on the debt at the time of the property's sale, and there are no allegations that it engaged in any deceptive, abusive, or otherwise unfair

11

practices in attempting to collect that debt. Accordingly, Count III will also be dismissed without prejudice.

### III. CONCLUSION

For the reasons set forth above, the motion to dismiss will be granted.

An appropriate order shall follow.

> /s/ *Sylvia H. Rambo*
> SYLVIA H. RAMBO
> United States District Judge

Dated: February 6, 2024